Wash, J.,
delivered the opinion- of the Court.
We have felt much difficulty in disposing of this cause, growing out of the state of the record and pleadings. When it was last argued, we inclined to think that a *255 new trial improperly granted, could not be assigned for error, and that the plaintiff hadUosthis remedy by omitting to take the proper exceptions on the second trial in the Circuit Court. Further examination and more mature deliberation lead us now to a different conclusion. In exercising^the superintending control and appellate power given to this Court, we have uniformly encouraged the use of the writ of error, as the most convenient and least exceptionable mode. We have held that it is error to refuse, improperly, to grant a new trial; to set aside a non-suit; or to grant a continuance. It is not perceived that any good reason exists for a distinction between the case in which the Circuit Court refuses improperly to set aside a non-suit,' and that in which a new trial is improperly granted. In neither case are the rights of the parties concluded, or an injury necessarily and irreparably sustained by the unsound exercise of the discretionary power of the Court. In both cases it is alike certain that the parties are improperly delayed and put to trouble and expense.
It seems to us, therefore, that the better doctrine'is, that where the Circuit Court refuses improperly to set aside a non-suit, or where a judgment of non-suit well taken is improperly set aside, where a continuance has been improperly refused, or a new trial improperly refused or granted, the party injured may seek redress on writ of error in this Court: when the facts are properly preserved in such cases, this Court can see whether the Circuit Court has exercised its discretion soundly, and if we should think that has not been done we have then 'the means of redressing' the wrong by reversing the judgment and placing the .parties upon the ground they were compelled to abandon or were not permitted to occupy. This makes it necessary to look minutely into the record of the first trial which ‘had been thought unnecessary on the first decision in this Court, in order to determine whether, upon the merits, the new trial was or was not improperly granted: the facts are sufficiently stated in the opinion delivered on the first argument of this cause. At the trial the defendants moved the following instructions :
First." If the jury find from the evidence that at the time the contract was made for freighting the four boats mentioned in the deposition of Stephen B. Thrasher, there were one or more persons in partnership in the ownership of the boats freighted, the plaintiff cannot recover in this action.
Second. If the jury find from the evidence that the boats were built by the plaintiff and another person or persons, in co-partnership as joint owners, it must be presumed that such co-partnership and joint ownership continued to the time of making the contract for the freight of said boats, and the plaintiff cannot recover, unless it is proved to the satisfaction of the jury that such partnership was dissolved, and that said plaintiff at the time of making the contract for freight was sole owner of the three boats numbered one, three and four. A *;
Third. If the jury find from the evidence that the plaintiff was not the sole owner of the four boats freighted, and that the contract for freight was entire for the whole four boats, the plaintiff cannot recover in this action.
Fourth. If the jury find from the evidence that the contract made by Thrasher with the defendants for freight, was entire for the whole freight, then the plaintiff cannot recover in this action, if it appears to the satisfaction of the jury, that any one or more of the boats belonged to any person other than the plaintiff.
Fifth. If the jury find from the evidence that any person other than the plaintiff was the owner of one or more of the boats, and that such owner and the plaintiff put their boats together for the purpose of being freighted and navigated together, *256 and Thrasher was the agent of all the owners, authorized to engage freight for all the boats in one contract, that he did make a contract entire for the whole freight, and navigated and conducted said boats together in one adventure or voyage, the plaintiff cannot recover.
Sixth. If the jury find from the evidence that the contract for freight was made by Thrasher as agent for the plaintiff, and not of any other person; and that such contract was entire for (he freight of the whole four boats, then the jury ought to allow to the defendants a credit for the value of the lead not delivered, unless it appear to the satisfaction of the jury that the lead was lost by the unavoidable dangers of the river. Which instructions the Court refused to give, but instructed the jury as follows :
First. The ownership of the boat or boats gives the right to recover the freight.
Second. That although the contract was made by Thrasher at the same time with defendants for freighting all of the four boats, yet the contract enures for the benefit of the owner or owners'respectively, and each separate owner may recover against the defendants.
Third. That the question to Thrasher whether the boat was lost by the unavoidable accidents or dangers of the river was an improper one, and he was not competent to decide that point; and that such question and answer ought not to go the jury.
Fourth. That if the jury find from the evidence, a partnership between plaintiff and one or more persons as to the ownership of the boats in the declaration mentioned, they ought to find for the defendants.
The defendants excepted to the opinion of the Court in refusing to give the instructions prayed for, and also in giving the instructions which were given. The plaintiff then prayed the Court to give the jury the following instructions:
First. That if the jury should find that Whiting Johnson was the only person known to the defendants at the time of making the contract for freight, but that Smith was the owner of one of the boats, Smith can sue for the freight which his boat carried, and Johnson for the residue of the freight.
Second. That no damage which the defendants may have sustained by the sinking of fiat boat number 2 can be off-set in this action.
Third. That the plaintiff is entitled in this action to recover the amount of freight agreed upon for so much lead as he delivered at St. Louis, deducting what has been paid to him. Which instructions were accordingly given and excepted to by the defendants.
The jury found a verdict for the plaintiff which, upon motion of the defendants’ counsel, was set aside and a new trial awarded, to which the plaintiff excepted; and it is now to be seen whether or not the new trial ought to haye been granted on the ground that the Circuit Court erred in giving or refusing to give instructions.
The defendants’ first instruction was properly refused, the law applicable to ships and sea-going vessels, is no way applicable to flat boats and fresh water craft. Ships and vessels are registered in their owners’ names, and are known to be navigated for the benefit of the owners, by persons employed for that purpose, who have rarely any interest at stake beyond their stated wages, &c. It is just and reasonable, therefore, that the owner of the ship should be entitled to the freight j but who can knovr the owner of a fiat boat? Usually the owner is navigator and carrier, and in that way becomes entitled to claim the freight, under his contract to transport or carry, *257 and not because he is owner. This instruction Was properly refused for another reason also. The evidence of partnership related to the building and not to the ownership of the boats.
The builder in truth is rarely the owner, and no inference of joint ownership in the boats could be drawn from the fact that they were partners in the contract for building. Resides, if in general such an inference might arise, it is in this case completely rebutted ¿y the proof that one of the joint builders descended with the boats from Galena to St. Louis without once claiming or attempting to^asáert or make known in any way his right of ownership.
file defendant’s second instruction was rightly refused upon the same grounds that justified the Court in refusing to give the first.
The defendant’s third instruction is bottomed upon'the same mistaken notion that ownership in the boat or wagon gives the owner, instead of the person who contracts to carry, the right to claim the freight. / .
The defendant’s fourth instruction is like his third. The entire contract with Thrasher as the agent of Johnson for the whole freight Of the four boats, gave Johnson who had possession and control of the boats as owner thereof, full right to sue for and recover the freight in his own name, whether the boats did in fact belong to him or not. It was therefore properly refused.
The defendant’s fifth instruction was also rightly refused. There was no evidence that the boats, were owned jointly, or that the joint owners or builders put their boats together for the purpose of being freighted and navigated together. Or that Thrasher was the agent of any person other than Johnson, or knew any one else as owHer.
The defendant’s sixth instruction raises a question on which we now feel no difficulty, and which shall he considered after we dispose of the other instructions that were given. And first of those given by.the Court in lieu of those asked by the defendants.
The first, second and fourth instructions given by the Court were erroneous for the reasons.assigned in noticing the first instruction refused, and for the same reasons which made it proper for the Court to refuse to give the defendants’ five first instructions. The giving of these instructions was inconsistent with the rejection of those asked for by the defendants. Reing prejudicial to the plaintiff however, and in accordance with the pievions prayer of the defendants, it does not lie in their mouth to object that they are inconsistent and contradictory. Such they clearly are, but they did no injury to the defendants.
The third instruction given by the Court has no'bearing on the question now raised. Now as to the instructions asked by the plaintiff.
The first instruction given on the prayer of the plaintiff was wrong in law, inconsistent with the refusal of the Court to give the five first instructions asked for by the defendants, and irrelevant to the matters in proof as well as to the parties in the cause.- However, as far as it could have any operation, It'was against the interest of the plaintiff, and cannot, therefore, avail the defendants.
The second instruction asked for by the plaintiff and given by the Court, is in substance the converse of the sixth instruction asked for by the defendants and presents precisely the same question, which we will presently consider.
The third instruction asked by the plaintiff was ineonsistent with the previous instructions given. If (upon the principle laid down by thq Court) the ownership of *258 the boat gave, the right to recover freight, then this third instruction would he clearly wrong, since it took the question of ownership entirely from the jury who were the proper judges of that fact. But in the view we take of the subject, this instruction was well enough, since the proof of partnership which was made could in no way affect the plaintiff’s right to sue for and recover the whole freight of the four boats. The only question now left to be disposed oí) arises on the plaintiff’s second instruction which was given, and the defendants’ sixth instruction which was refused; and it is this :
In an action by the bailee or carrier of goods to recover the freight or price of transportation, can the defendant recover by way of set-off as for goods sold and delivered, the value of the goods not delivered'? The affirmative is earnestly maintained by the defendants’ counsel. He argues thus, that trover would lie in such case for the goods not delivered: and that wherever trover will lie, the owner may waive the tort and bring assumpsit; and that wherever indebitatus assumpsit will lie for goods sold and delivered, a set off may be pleaded, &c. The conclusion is clearly and logically drawn and comes to sound law, but the postulate is false. It is not true that trover would lie in such a case.
Trover will doubtless lie against a carrier for conversion, but then it must be an actual conversion by some illegal assumption of ownership by illegally using or injuring the property. Something more than a mere neglect or omission to deliver. S. Burr. 2825, Ross v. Johnson; 2 Salk. 655; Peake’s N. P. C. 49; 2 Saund. 47; c. n. 1 Bull. N. P. 44; 6 East. 540; Peake’s Evi. 298; 1 Chit. pl. 154. The refusal to deliver may be on the ground that the property was left in pledge, or that as carrier he detains until the carriage is paid for, and so the refusal being justified would not amount to a conversion. The detention must be wrongful, and how can it be said that the party detains wrongfully, when in truth the property has been lost or destroyed by accident?
For losses or injuries to property arising from neglect, the owner will not be put to his special action, and cannot bring trover.
So in indebitatus assumpsit for goods sold and delivered, there must be proof of a sale express or implied: a naked delivery will not do. It may have been the defendant’s own property returned to him ; or it may have been delivered in payment of a previous debt or as a pledge; or it may have been delivered to a carrier who coaid well account for it in an action on his special contract; where there is a special contract subsisting and in force, the plaintiff cannot waive it and recover in indebitatus assumpsit. Much reliance has been placed in argument on the case of Floyd v. Wiley, decided by this Court, 1 Mo. Decisions 430 and 643. That case will not sustain the positions taken by the counsel for the defendants. In that case the property had been wrongfully detained, under a claim by sale and purchase from a person having no title ; and the plaintiff' was allowed to waive the tort and recover in assumpsit, that is, upon the general principle; that where trover would lie, assumpsit will also, if the plaintiff'may choose to waive the tort. Tiie authorities cited in that case fully sustain the principle of the decision. We are of opinion, therefore, that the Circuit Court decided correctly in refusing to give the defendants’ sixth and in giving the plaintiff’s second instruction. And the mis-direction of that Court in the other matters objected being to the prejudice of the plaintiff, afforded no ground for the new-trial granted to the defendants. Upon the whole matter then, the judgment of the Circuit Court is reversed, and the cause remanded with directions to that Court to *259 enter up a judgment for the plaintiff on the verdict of the jury as it was found on the first trial.